**Roy E. DOYLE, Plaintiff,**

**v.**

**U.S. POSTAL SERVICE, Defendant.**

**No. 91CV00276.**

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 5, 1991.

David Kohlman Spiro, Rilee, Cantor & Edmonds, Richmond, Va., for plaintiff.

Robert William Jaspen, Asst. U.S. Atty., U.S. Attys. Office, Richmond, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This is matter is before the Court on the plaintiff's motion to quash an administrative subpoena issued by the United States Postal Service, pursuant to Section 1110 of the Right to Financial Privacy Act of 1978, 12 U.S.C. Section 3401 *et seq.* This case presents an issue of first impression: whether the Chief Postal Inspector can designate his subpoena power under the Inspector General Act.

*Factual Background*

On or about February 4, 1991, the U.S. Postal Inspection Service issued a subpoena *duces tecum* to Wayne Hanks, President/Custodian of Records of the First National Bank of Emporia, Virginia, pursuant to 5 U.S.C.App. § 6(a)(1) and (a)(4). The subpoena commanded the production of bank records relating to the plaintiff and/or the Emporia Athletic and Active Wear Outlet dating from December 9, 1989 to the present.

The bank records are sought in conjunction with an inquiry concerning whether Mr. Doyle was engaged in gainful employment as the proprietor of a small business while on sick leave status from the Postal Service recovering from neck surgery. The plaintiff was apparently removed from his job as a postal service employee at some point between February and April of 1991, based at least in part on a Postal Inspection Report. He has filed a grievance over his removal, which is presently being handled by the U.S. Postal Workers Union's regional office in Maryland. The plaintiff claims that the subpoena is not authorized by statute, is overly broad, and seeks irrelevant material.

For the reasons stated below, Mr. Doyle's motion to quash the administrative subpoena is DENIED.

*Argument*

■ Courts will enforce a subpoena if 1) the subpoena is within the statutory authority of the agency, 2) the information sought is reasonably relevant to the inquiry, and 3) the demand is not unreasonably broad or burdensome. *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Mr. Doyle claims that the administrative subpoena issued in his case should not be enforced because it fails on all three counts.

### A. *Not Authorized by Statute*

Section 6(a)(1) and (4) of the Inspector General Act authorizes the Inspector General to require by subpoena "the production of all ... documents ... necessary in the performance of the functions assigned by [the] Act". 5 U.S.C.App. § 6(a)(1) and (4). In this case, the subpoena was issued by the U.S. Postal Inspection Service and signed by an Assistant Regional Chief Postal Inspector, D.A. Planey. The plaintiff maintains that Congress did not intend to grant such intrusive power to a "designee." In other words, Mr. Doyle states that the subpoena is invalid because it was not issued in the name of the Chief Postal Inspector, who holds the position of Inspector General of the U.S. Postal Service under the act. *See* 5 U.S.C.App. § 8E(f)(1). The plaintiff also asserts that even if the subpoena power could be delegated, there has been no showing to date that the subpoena has in fact been delegated and, lastly, that proper notice was not given to Mr.

Doyle as to the reason why the records were subpoenaed.

The Inspector General Act gives each Inspector General broad duties and responsibilities. Each Inspector General is mandated to conduct audits and investigations relating to the programs and operations of his agency, 5 U.S.C.App. § 4(a)(1), and to work with other agencies and local government units to prevent and detect instances of fraud and abuse, 5 U.S.C.App. § 4(a)(4). In order to properly perform these investigatory and auditing functions, Inspectors General are given subpoena authority to compel the necessary documentary evidence.

■ Given these broad responsibilities, it is not surprising that Congress recognized that Inspectors General could not effectively perform their duties without assistance. Accordingly, 5 U.S.C.App. § 8E(g)(2) states:

[A]n Inspector General is authorized to select, appoint, and employ such officers and employees as may be necessary for carrying out the functions, powers, and duties of the Office of Inspector General....

Although neither the Government nor Mr. Doyle cites a case interpreting this subsection, the most reasonable construction would seem to be one that allows an Inspector General to delegate his statutory responsibilities, including his subpoena power, to subordinates. A contrary reading would inhibit an I.G.'s capability to properly discharge his statutory duties. Therefore, the power of the Chief Postal Inspector to delegate his subpoena authority to subordinates is supported by both the plain language and underlying purposes of the Act.

■ Contrary to Mr. Doyle's claims, the Chief Postal Inspector has in fact delegated his duty to issue the subpoena. Inspector Planey, who signed the subpoena in this case, declares that Chief Postal Inspector Clauson issued Letter 89–3 which adopts the same policies and procedures for issuance of I.G. subpoenas as previously promulgated in Letter ARL 88–03 concerning the Program Fraud Civil Remedies Act.

Government Exhibit 1, Planey Declaration, at Exhibit 2. In ARL 88–03, the Chief Postal Inspector expressly delegates the authority to issue administrative subpoenas to the Assistant Regional Chief Inspector— Criminal and further provides that if this officer is unavailable, "alternate signers" may be designated so long as they are of the requisite pay grade. *Id.*, at Exhibit 3. Planey declares that he is among one of the individuals who have been designated as alternative signers authorized to issue subpoenas. *Id.*, at pp. 140–41. Thus, it seems clear that Inspector Planey was fully authorized to issue the subpoena at question.

■ Mr. Doyle also argues that the statutory notice requirement has not been satisfied by the Government in this case. Although the Inspector General Act does not require that notice of a subpoena served upon a records custodian be provided to the individuals whose records are sought, the provisions of the Right to Financial Privacy Act does add a notice requirement when customer records are sought from a financial institution. 12 U.S.C. § 3405 (stating that a customer should be provided with a notice stating the nature of the inquiry). Mr. Doyle argues that the notice is deficient because while it identifies the records sought, it fails to state the agency's motivation for seeking the records which are the subject of the subpoena.

■ Mr. Doyle's objection is without merit. While the notice sent on February 7, 1991 does simply describe the records sought, Mr. Doyle was provided with contemporaneous actual notice of the agency's reason for seeking the records. Enclosed along with the notice was a copy of the subpoena itself which states that it was issued "in connection with an official investigation relating to programs and operations of the United States Postal Service, to wit: An alleged on-the-job injury relating to a possible false claim for Workers' Compensation benefits by a U.S.P.S. employee." Planey Declaration, at Exhibit 1. That the Government's motivation for seeking the records which are the subject of the subpoena is set forth in an enclosure which accompanied the notice rather than the no-

tice itself is an administrative technicality unworthy of legal recognition.

## B. *Documents Sought Are Not Relevant*

■ Mr. Doyle argues that his personal financial records and the financial records of his athletic store are irrelevant to the issue of whether his claims to federal worker's compensation benefits were fraudulent. This is not true. It is obvious that business records relating to Mr. Doyle and a retail store he is alleged to have operated while on disability from his employment with the Postal Service may well contain highly probative evidence concerning whether his claims for federal worker's compensation benefits were fraudulent. Although Mr. Doyle's business activities may not be inconsistent with his disability, a standard which required the Government to demonstrate that subpoenaed records must be inconsistent with innocence would set too exacting a test for the validity of an Inspector General subpoena. What is relevant is that the records sought may be consistent with fraud; this conclusion justifies the enforcement of the subpoena on relevancy grounds.

## C. *Demand For Records is Overbroad*

Lastly, Mr. Doyle claims the Government's demand of "any and all" business records of Mr. Doyle or Emporia Athletic and Active Wear Outlet dating from December 9, 1989 to the present is overbroad. Mr. Doyle regards this request as nothing more than a fishing expedition by the Government.

It is well-settled that the authority of an Inspector General to investigate "is essentially the same as the grand jury's ... and is governed by the same limitations. These are that he shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be limited ... by forecasts of the probable result of the investigation." *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614 (1946) (citation omitted). The agency "can investigate merely on suspicion that the law is being violated, or even just because

it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 363–64, 94 L.Ed. 401 (1950).

The legislative history of the Inspector General Act confirms that an I.G.'s subpoena authority is expansive; Congress stated that the Act authorizes an Inspector General "to subpoena such materials as he deems necessary to carry out his duties and responsibilities." S.Rep. No. 95–1071, 95th Cong., 2d Sess. 33 (1978), reprinted in U.S.Code Cong. & Admin.News 2676, 2708. Accordingly, any intimation that the phrasing in 5 U.S.C.App. § 6(a)(4) that an Inspector General is authorized to subpoena records "necessary in the performance of the functions assigned by this Act" is intended as a limitation upon an I.G.'s subpoena power must be rejected. *United States v. Westinghouse Electric Corp.*, 788 F.2d 164, 170 (3d Cir.1986) ("A constricted interpretation would be at odds with the broad powers conferred on the Inspector General by the statute."). Thus, it can be said that any subpoena issued for the purpose of promoting economy and efficiency or to prevent, detect, or prosecute fraud or abuse is enforceable. Consequently, a reviewing court "must order production of materials sought by an Inspector General unless his subpoena is 'plainly incompetent or irrelevant to any lawful purpose of the [agency] in the discharge of its duties....'" *United States v. Aero–Mayflower Transit Co.*, 646 F.Supp. 1467, 1470 (D.D.C.1986) (quoting *Endicott Johnson v. Perkins*, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943)).

■ Measured against these legal standards, the subpoena challenged by Mr. Doyle passes muster. As discussed above, the business records of Mr. Doyle and his retail store are relevant to a possible fraudulent claim for workman's compensation. The subpoena sought records from December 9, 1989, the date of Doyle's alleged injury, until February 4, 1991, the date of the subpoena's issuance. The records from the period while Doyle was on disability or sick leave status, December 9, 1989 through May 28, 1990, would be clearly

pertinent as they would contribute to an informed judgment regarding the scope and extent of Doyle's private business activities while he was on leave from the Postal Service. Records after May 28, 1990 until the date of the subpoena would likewise be relevant as they would provide a measure of whether Mr. Doyle's involvement in his athletic store business changed following his return to employment, thus adding perspective to a judgment regarding the permissibility of his private business activities while on disability status.

### Conclusion

For the reasons stated above, the Court DENIES Mr. Doyle's motion to quash the Government's subpoena *duces tecum.* The subpoena is authorized by the statute, the records sought are relevant to the underlying investigation, and the demand is not overbroad.